IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTOINETTE R. LAMPKIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3400 |
| | § | |
| STAFFMARK HOLDINGS, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM & ORDER

Pending is Defendant Staffmark Holdings, Inc.'s Rule 12(b)(6) Motion to Dismiss or in the Alternative, Partial Motion to Dismiss (Document No. 25).[1] After considering the motion, response, reply, and applicable law, the Court concludes as follows.[2]

I. Background

In this discrimination suit, *pro se* Plaintiff Antoinette R. Lampkin ("Plaintiff"), a black woman, alleges that she applied for work at Defendant Staffmark Holdings, Inc. ("Defendant"), a staffing agency.[3] On March 5, 2012, Defendant's employee Lindsey

---

[1] Defendant's previous Motion to Dismiss (Document No. 15) is DENIED as moot.

[2] Plaintiff's Motion to Dismiss Defendant's Rule 12(b)(6) Motion to Dismiss or in the Alternative, Partial Motion to Dismiss (Document No. 26) is considered a Response to Defendant's Motion to Dismiss and Clerk shall reclassify it as a Response instead of a Motion.

[3] *See* Document No. 21 at 3 (1st Am. Complt.).

Miller ("Miller"), a white female, interviewed Plaintiff and spoke with her about data entry positions then available in Conroe, Texas.[4] Plaintiff informed Miller that she was interested in the positions, but that she required a flexible work schedule because she had a special needs child who she had to take to therapy appointments twice a week.[5] Plaintiff indicated to Miller that she would make up the missed time by coming in early, working late, working through lunch, or working on weekends.[6] Approximately three weeks later, after hearing nothing further from Miller, Plaintiff emailed her to ask for an update on her application.[7] Miller responded that the positions she had discussed with Plaintiff were on hold, and Defendant had no other flexible positions available at that time.[8]

Plaintiff subsequently filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC").[9] She did so by using EEOC Form 5, which

---

[4] Id.

[5] Id. At the Rule 16 conference, Plaintiff explained that the child is her great-nephew, and his disability is a speech delay. Plaintiff asserts that the therapy appointments were scheduled for Wednesdays at 5:00 pm and Thursdays at 6:00 pm. Id.

[6] Id.

[7] Id.

[8] Id. at 3-4.

[9] Id. at 4.

2

instructed the complainant to check "appropriate box(es)" to denote the basis of the alleged discrimination.[10] Of the nine bases for which boxes were provided, Plaintiff checked only "Disability."[11] On August 15, 2012, the EEOC issued a Dismissal and Notice of Rights.[12]

Plaintiff now brings suit alleging that Defendant discriminated against her on the basis of her relationship to an individual with a disability in violation of 42 U.S.C. § 12112 and on the basis of her race in violation of Title VII.[13] Defendant moves to dismiss, alleging that Plaintiff did not state a claim for disability association discrimination or race discrimination, and that Plaintiff failed to exhaust the administrative remedies for her race discrimination claim.[14]

## II. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or

---

[10] Document No. 1 at 5 of 5.

[11] Id.

[12] Id. at 4 of 5.

[13] Document No. 21.

[14] Document No. 25.

3

admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

III. <u>Analysis</u>

A. <u>Race Discrimination Claims</u>

Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. <u>Pacheco v. Mineta</u>, 448 F.3d 783, 788 (5th Cir. 2006); <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378-79 (5th Cir. 2002). "The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers." <u>Pacheco</u>, 488 F.3d at 788. "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of the EEOC complaint should be construed liberally." <u>Id.</u> (citing <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 463 (5th Cir. 1970); <u>Fellows v. Universal Restaurants, Inc.</u>, 701 F.2d 447, 451 (5th Cir. 1983)). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." <u>Pacheco</u>, 488 F.3d at 788-89 (citing <u>Sanchez</u>, 431 F.2d at 466). Accordingly, the Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC

5

investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Pacheco, 488 F.3d at 789 (quoting Sanchez, 431 F.2d at 466).

In her Charge, Plaintiff checked only the box for disability discrimination and not for race discrimination.[15] This failure is not "a fatal error." Sanchez, 431 F.2d at 463. "[T]he crucial element of a charge of discrimination is the factual statement contained therein." Id. at 462. Here, Plaintiff's factual statement described discrimination based on disability assocation, but never mentioned or spoke of race.[16]

---

[15] Document No. 1 at 5 of 5. Because the EEOC Charge and Dismissal and Notice of Rights, attached to Plaintiff's Original Complaint, appear to be part of the Title VII administrative record, which is a public record, they may be considered without converting this motion into one for summary judgment. See Green v. Small, No. Civ. A. 05-1055(ESH), 2006 WL 148740, at *6 n.4 (D.D.C. Jan. 19, 2006) (finding in Title VII case that the documents in administrative proceedings underlying the case were matters of public record and could be considered in a 12(b)(6) motion without converting it into a motion for summary judgment); Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) (stating that courts may consider matters of which it can take judicial notice on a 12(b)(6) motion and deciding that in securities fraud case this includes public disclosure documents filed with the SEC).

[16] Plaintiff's Charge provides the following narrative:

> I. On February 27, 2012 I submitted my resume to Veronica Garcia of StaffMark to be considered for any available position. I interviewed with Lindsey Miller on March 5, 2012 and she advised me of an available data entry position in Conroe, Texas. I expressed interest but advised that I cared for a special needs child that required speech and occupational therapy two days out of the week. I explained that the time I would require off would

6

Plaintiff does not dispute that her EEOC Charge made no mention of race discrimination against her.[17] Plaintiff's EEOC charge, in fact, made no mention either of Plaintiff's race or the race(s) of Defendant's employees who rejected her application.[18] It follows that an EEOC investigation of race discrimination claims could not be expected to have grown out of this particular charge of disability discrimination that she filed with the EEOC. *See* Kebiro v. Walmart, 193 F. Appx. 365, 367 (5th Cir. 2006) (plaintiff's racial and gender discrimination claims could not be expected to grow out of his EEOC filings where his filings mentioned only his age and national origin, and mentioned his

---

    not be excessive and I was open to making up any missed time.

II. To my knowledge my resume and requests for a modified work schedule were submitted to the company that was hiring. On April 5, 2012, I was advised that the positions were on hold and ultimately I was no longer being considered for the data entry position.

III. I believe that I was discriminated against and denied hire due to my disclosing to the organization that I required time off for medical reasons in violation of the Americans with Disabilities Act of 1990, as amended.

    Also, per Ms. Lindsey Miller email, she stated she had me down for available but had no positions at the time flexible on their schedules.

Document No. 1 at 5 of 5.

[17] Document No. 26 at 2-4.

[18] Document No. 1 at 5 of 5.

7

replacements only in terms of their age and status as non-Kenyans).[19] Because Plaintiff did not exhaust her administrative remedies on a race discrimination claim, that claim must be dismissed.[20]

B. <u>Disability Association Discrimination</u>

The Americans with Disabilities Act ("ADA") prohibits "excluding or otherwise denying equal jobs or benefits to a

---

[19] Plaintiff points to an EEOC guidance document indicating that black women with caregiving responsibilities are more likely to experience disparate treatment, and that she was "not educated or informed by the EEOC investigator that a [claim] of disability association discrimination subjects African American women to disparate treatment in employment, and is a discriminatory practice mostly toward women of color, rather than White women." The EEOC's guidance document--which Plaintiff could have considered before she filed her EEOC Charge--cannot now be invoked as a substitute for a charge that she did not actually make in the EEOC.

[20] Even if Plaintiff had exhausted her administrative remedies, her Complaint fails to allege sufficient facts to state a claim for race discrimination. Plaintiff's Complaint alleges "racial discrimination," states that she is black and Miller is white, and quotes the EEOC Enforcement Guidance document described in the preceding footnote. But Plaintiff fails to allege any specific facts indicating that *she* was discriminated against on the basis of her race, and thus has failed to state a claim. See <u>Richards v. JRK Prop. Holdings</u>, 405 F. Appx. 829, 831 (5th Cir. 2010) ("[Plaintiff] provided no facts that lend support to her belief that she was terminated because of her race. Her assertion of racial discrimination is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss."); <u>Taylor</u>, 296 F.3d at 378 ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'") (quoting <u>S. Christian Leadership Conference v. Supreme Court of the State of La.</u>, 252 F.3d 781, 785 (5th Cir. 2001)).

8

qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Earlier this year the Fifth Circuit observed that it "has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual," Grimes v. Wal-Mart Stores Tex., LLC, 505 F. Appx. 376, 380 n.1, and indeed, the Court has found no case in the Fifth Circuit in which such an action has successfully been maintained. Nonetheless, Grimes observed that some district courts have recognized such a cause of action, and require the plaintiff to meet the following test to demonstrate a prima facie case of disability association discrimination: "(1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action." Id. at 380.

Plaintiff has stated sufficient facts to allege that she was qualified for the data entry positions for which she applied. Plaintiff alleges that she had over 25 years of experience in "office administration environments" and that she has "above average testing scores for various computer software

9

applications."[21] Furthermore, Plaintiff states that she "has two (2) association degrees; one in Office/Legal Administrative Assistant earned in May of 2005, and the second one in Paralegal earned in May of 2012."[22]

Plaintiff also states sufficient facts to allege that Defendant subjected her to an adverse employment action. Plaintiff states that Miller told Plaintiff "she would submit Plaintiff's resume and the schedule for the appointments to the company," that she did not hear anything further from Miller for more than twenty days, and that when she emailed Miller for a status update, she was told "that the positions were on hold and that [Miller] had no other positions flexible on their schedules."[23] Construing these allegations favorably to Plaintiff, Plaintiff has alleged that Defendant refused to hire her, an adverse employment decision within the meaning of the ADA. See 42 U.S.C. § 12112(a).

Plaintiff has also alleged that Defendant had knowledge of Plaintiff's disabled relative. Plaintiff states that she "disclosed to [Miller] information in regards to having a special

---

[21] Document No. 21 at 4. Plaintiff alleges that Defendant "made copies of Plaintiff's previous test scores she brought with her for: Microsoft Word with 93%, Microsoft Excel with 87%, Data Entry score with a 95% accuracy rate and 12,353 key strokes per hour (KPH), Typing Test with 62 words per minute, and a Ten Key Test with a 100% accuracy rate and 13,153 KPH." Id. at 5.

[22] Id. at 4-5.

[23] Id. at 3-4.

10

needs child that has a therapy schedule for speech and occupational for two (2) days per week," and that Miller noted Plaintiff's schedule requirements on her application.[24] Defendant contends that this is not sufficient, because Plaintiff failed to allege that her relative is disabled within the meaning of the ADA.[25] At this stage, where all inferences are drawn in favor of Plaintiff, it is not necessary for Plaintiff to establish that the child's disability is a qualifying one. Plaintiff's allegations that she has a "special needs" child who requires speech and occupational therapy weekly and that she was discriminated against based on that child's disability are sufficient to state a claim. *See* Noles v. Quality Estates, Inc., No. Civ. A. 302CV0491D, 2003 WL 22862766, at *1 (N.D. Tex. June 30, 2003) (denying motion to dismiss based on argument that plaintiff's mother's cancer was not a disability under the ADA and explaining "the court cannot dismiss this claim based on the allegations of the complaint alone, which provide insufficient details concerning the specific circumstances of Noles' mother's cancer.").

---

[24] Document No. 21 at 3.

[25] Document No. 25 at 7. The ADA defines "disability" as:

   (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

Finally, Plaintiff has alleged that Defendant refused to hire her under circumstances sufficient to raise a reasonable inference that the child's disability was a determining factor. Plaintiff alleges that Miller told her that Defendant had no openings fit for Plaintiff after Plaintiff informed Miller that she had a special needs child.[26] Viewed in the light most favorable to Plaintiff, these allegations state a claim that Defendant's failure to hire Plaintiff was due to disability association discrimination.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Staffmark Holdings, Inc.'s Rule 12(b)(6) Motion to Dismiss or in the Alternative, Partial Motion to Dismiss (Document No. 25) is GRANTED as to Plaintiff's claim of race discrimination and this claim is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, and Defendant's motion is otherwise DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 3rd day of September, 2013.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[26] Document No. 21 at 3.